# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

_____
                                  )

**UNITED STATES OF AMERICA,**     )        Case No.  5:13cr00030-5
                                    )

***v.***                                 )        **REPORT AND**
                                  )        **RECOMMENDATION**

**CHARLES FRANKLIN BROWN,**    )        By: Hon. James G. Welsh
                                  )          U.S. Magistrate Judge

            ***Defendant***        )
_____)

## I.      FACTUAL AND PROCEDURAL BACKGROUND

       Proceeding pro se, Charles William Brown has filed a Motion for Remission of Forfeiture, Dkt. No. 341.  The United States argues the court lacks jurisdiction to rule on the Motion for Remission of Forfeiture because the property at issue, a 2003 BMW sedan, was forfeited to the United States through an administrative forfeiture proceeding.  The parties did not request oral argument.… [F]ind[ing] [this court] has jurisdiction over this matter…, [it] w[as] refer[red] it to the [undersigned] United States Magistrate Judge for an evidentiary hearing in order to determine whether the United States failed to follow its own regulations for conducting administrative forfeiture proceedings.

Dkt, #371 at *1 [1]

---

[1]  By order entered June 2, 2015, Charles William Brown's Motion for Remission of Forfeiture (dkt. #341), was referred to United States Magistrate Judge James G. Welsh pursuant to 28 U.S.C. § 636(b)(1)(B); "Judge Welsh [was] directed to conduct such proceedings as will enable him to submit to this court proposed findings of fact, conclusions of law, and a recommended disposition regarding whether or not the United States, through the actions of the Drug Enforcement Administration, failed to follow the regulations guiding administrative forfeiture proceedings." Dkt. #372)

Charles William Brown ("Brown") is the father of the defendant, Charles Franklin Brown, who pleaded guilty to drug trafficking charges in 2014. In connection with those charges, the United States sought the forfeiture of a 2003 BMW 330XI VIN: WBAEW53463PG09749 ("the BMW") under 21 U.S.C. § 881 because the BMW was allegedly used during or acquired as a result of a violation of the Controlled Substances Act, 21 U.S.C. § 801. The government seized the BMW in April 2014, published notice of the seizure and its intent to forfeit on an official government site for thirty days, and sent direct notice to all known potential claimants by certified mail. Brown, his son, and his son's attorney all received notice of the government's intent to forfeit the BMW.

Brown filed a petition for remission of the BMW with the Drug Enforcement Administration ("DEA"), on June 18, 2014. The DEA responded by mail that Brown's petition was improperly executed because it lacked a declaration under penalty of perjury that his petition was true and correct. See Dkt. No. 349 at *23-25. The DEA's response letter informed Brown how to properly execute his petition and gave him thirty days from the receipt of the DEA's letter to file a valid petition. Id. at *24. Brown received the response letter on July 12, 2014. Id. at *26. Brown corrected his petition and mailed the corrected version to the DEA. The DEA received it on July 25. Id. at *27.

The DEA responded to Brown's corrected petition for remission and informed Brown that his petition would "be ruled on administratively by this office. Before any decision can be made, your petition must be reviewed and an investigation may be required." Id. at *29. The DEA's letter is date-stamped August 6, and Brown received it on August 15. Id. at *31. On August 12, 2014, six days after the DEA informed Brown it would be reviewing

2

his petition, the DEA issued a Declaration of Forfeiture for the BMW. Id. at *32. The Declaration of Forfeiture states:

> Notice of the seizure has been sent to all known parties who may have a legal or possessory interest in the property. Also, in accordance with 19 U.S.C. section 1607, notice of the seizure has been published and no claim has been filed for the property within 30 days from the date of last publication of the advertisement.

Id.

The United States sold the BMW in August or September 2014, and Brown filed his motion for remission in this court on December 30. Brown's motion is a duplicate of the revised petition he sent to the DEA but signed and dated December 26, 2014. The United States filed a response in opposition to Brown's motion, Dkt. No. 347, and provided additional evidence to support its opposition, Dkt. No. 349.

Brown claims he has an ownership interest in the BMW because he paid for the majority of it and is listed as an owner on the vehicle's title. According to Brown, he gave his son $8,000 to purchase the car and paid all of the DMV fees. His son contributed $1,000 towards the purchase of the BMW and repaid Brown $2,000 before being incarcerated. Brown argues that since he still has more than a 50% ownership interest in the vehicle, it should not have been forfeited.

The United States argues the court lacks jurisdiction to rule on the merits of the administrative forfeiture of the BMW and that this court lacks even equitable remedy jurisdiction after the enactment of the Civil Asset Forfeiture Reform Act ("CAFRA") in 2000.

Dkt. #371 at *1-3.

Brown received adequate notice of the government's intent to forfeit the BMW on May 15, 2014. Dkt. No. 349 at *16-17. He timely filed a petition for remission thereby choosing the administrative forum. Id. at *21. Brown's first petition was defective, and the DEA gave him thirty days from the date of receipt of its July 2 response letter to file a revised petition. Id. at *5, *23-24.

Brown received the July 2 letter on July 12, and his revised petition was timely received by the DEA on July 25. Id. at *26-27. On August 6, the DEA mailed Brown a response letter to the revised petition acknowledging the DEA's receipt of the revised petition and informing Brown that the petition would be ruled on administratively. Id. at *29.

Brown's motion does not allege that the DEA violated its own regulations. However, the evidence submitted by the United States in opposition to Brown's motion plainly presents a question as to whether the DEA properly considered Brown's petition for remission of the BMW. There is no evidence in the record that a report was made for the ruling official to consider, that the ruling official made a decision, much less informed Brown of the decision, or that the ruling official informed Brown of his right to file a request for reconsideration. Nothing in the August 6 DEA response letter gives any indication that Brown's petition was defective. In fact, it represents the exact opposite and says the petition will be ruled on administratively and may require an investigation. Id. at *29. Furthermore, the court cannot harmonize the August 6 DEA response letter acknowledging the receipt of Brown's petition and the August 12 Declaration of Forfeiture stating that no claim had been filed for the property. The Declaration of Vicki L. Rashid, Forfeiture Counsel for the DEA, stating "there had not been any

> properly executed claim received" immediately after she affirmed the DEA received Brown's revised petition, id. at *10-11, also raises procedural questions.

Dkt. #372 at *5-6.

> The evidence before the court raises questions as to whether the administrative proceeding was properly conducted. Indeed, the "pertinent issue" to the court "is whether the DEA complied with its regulations." [citations omitted]. It is not a question of whether the agency abused its discretion, but, rather, whether the DEA failed to follow statutory and regulatory requirements [citation omitted].

> Accordingly, because Brown is proceeding *pro se,* the court finds it has jurisdiction over this matter. To ensure that Brown has not suffered manifest injustice, the court will refer this matter to the United States Magistrate Judge for an evidentiary hearing regarding the administrative determination of Brown's petition and whether or not the United States, through the actions of the DEA, failed to follow the regulations guiding administrative forfeiture proceedings.

Dkt. #371 at *7-8.

A hearing before the undersigned magistrate judge was regularly scheduled for July 2, 2015; Brown appeared in person, and the government appeared by counsel. With attachments the government submitted a supplemental affidavit of Vicki L. Rashid, DEA's forfeiture counsel (dkt. #387). Therein, she represented under oath that "based on a review and investigation of the merits of [Brown's] petition and an agency report," her office denied Brown's petition on April 10, 2015 and that Brown had been appropriately notified by a ruling letter of this decision and of his right to "request reconsideration" pursuant to 28 C.F.R. § 9.3(j). Dkt. #387 at *1-2, 4-7, 9.

## II.    ISSUES

The government's first contention is that it appropriately followed the applicable forfeiture regulations set forth in 28 C.F.R. Pt. 9, that Brown suffered no manifest injustice, and hence no denial of procedural due process.    As a second contention, the government argues that any procedural deficiency was mooted by the agency's substantive consideration and action on Brown's petition, as outlined in the declaration and petition ruling letter of DEA's forfeiture counsel (dkt. #387 at *2-4, 6-9).

## III.    FAILURE TO FOLLOW ADMINISTRATIVE PROCEDURE

As outlined in the presiding district judge' Memorandum Opinion, on May 13, 2014, the DEA sent a Notice of Seizure ("Notice") pursuant to 18 U.S.C. § 983 and 19 U.S.C. § 1602 *et seq*, to Charles William Brown by certified mail, return receipt requested  (dkt. #349 at *16), and a certified mail receipt indicates that the Notice was received on May 15, 2014 (dkt. #349 at *17). The Notice identified the 2003 BMW in question that had been seized by the DEA from Charles Franklin Brown on April 25, 2014.   It informed Brown that civil forfeiture proceedings were underway.  *Inter alia*, it apprised Brown of the statutory basis for civil forfeiture; it outlined the general administrative forfeiture procedures, and it advised Brown to review "**very carefully**." the procedure to request remission or mitigation and "in addition, or in lieu [thereof]," the procedure to challenge the forfeiture judicially.  *Id*. at *16 (emphasis in original).

During the administrative deficiency in his original letter/petition to the DEA, Brown promptly sent his amended letter requesting remission and mitigation [2]  of the agency's seizure of

---

[2]    A petition for remission or mitigation "is a request for leniency, or an executive pardon, based on the petitioner's representations of innocence or lack of knowledge underlying unlawful conduct. "*United States v. Morgan*, 84 F.3d 765, 767 n.3 (5th Cir. 1996) (citing *United States v. Vega*, 72 F.3d 507, 514

his vehicle.  Upon its receipt of Brown's amended petition, and seemingly in compliance with its regulatory obligations under 28 C.F.R. § 9.3, the agency's Asset Forfeiture Section informed him that it "w[ould] be ruled on" after it was reviewed and any necessary investigation completed. Dkt. #349 at *29-30.

Promulgated pursuant to 18 U.S.C. § 983's general rules governing civil forfeiture proceedings, Part 9 of 28 C.F.R. establishes Department of Justice ("DOJ") regulations governing the remission or mitigation of administrative forfeitures, including the "internal requirements … designed to guide the orderly administration" of non-judicial civil forfeiture proceedings.  See 28 C.F.R. § 9.1.  Therefore, with Brown's election to proceed under the non-judicial civil forfeiture statute, one would reasonably anticipate that his petition would be considered by DEA pursuant to the follow-up obligations of the seizing agency set forth in 28 C.F.R. § 9.3.  By this regulation, it is directed that DEA "**shall** investigate the merits of the petition," [that it] "may prepare a written report,…[and] this report **shall** be submitted to the ruling official" within the DEA "for review and consideration."  *Id*. at § 9.3(f) (emphasis added).

Although that language is precatory in part, it is mandatory in significant part. *Cf. National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 109 (2002) (noting that the word "shall" admits of no discretion).  The duty it imposes "to investigate the merits" of Brown's petition, therefore, serves as a necessary precondition to a ruling his petition, *cf. National Wildlife Federation v. Snow*, 561 F.2d 227, 239-240 (DC Cir. 1976) (noting that a highway location public hearing was a necessary precondition to any advance right-of-way acquisition).

---

(7th Cir. 1995); *United States v. Wong*, 62 F.3d 1212, 1214 (9th Cir. 1995)).

Nevertheless, instead of processing Brown's petition in consistent with the regulatory safeguards set-out in Section 9.3 of 28 C.F.R., six days after the Asset Forfeiture Section acknowledged receipt of Brown's petition, the same Asset Forfeiture Section found "no claim had been filed, and a Declaration of Forfeiture was entered amercing one 2003 BMW 330xi to the United States pursuant to 19 U.S.C. § 1609. Dkt # 349 at *32.

Given the mandatory nature of those regulations, on their face the DEA is required to comply. To fulfill its duty under these DOJ regulations, DEA must investigate and review Brown's petition before denying his petition, and its failure to do so is plainly inconsistent with the language of the regulation. *Cf. United States v. UPS Customhouse Brokerage, Inc.,* 686 F. Supp. 2d 1337, 1344; 34 C.I.T. 96, 100 (Ct. Int'l Trade. 2010) ("the term 'will' in the phrase 'will consider'… is a mandatory term; … thus any interpretation of [the regulation] that does not require consideration of the listed factors is clearly inconsistent with [its] plain language" and was improper) (internal quotation marks omitted).

The question for the court, therefore, becomes whether due process rights attach to the agency's improper processing of Brown's remission petition, and if so whether Brown's right to due process was potentially violated. [3]    The Supreme Court's holding in *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555 (1983), strongly suggests the answer to both questions is "yes."

In *$8,850.00* the claimant filed a petition for remission of funds that had been seized by the Customs Service two weeks earlier. Shortly thereafter, in October 1975 the government

---

[3]  "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law…." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015)

instituted a multi-nation investigation of the petition, and seventeen months later it filed its forfeiture complaint in federal district court. Seeking dismissal of the forfeiture petition, the claimant therein alleged that the 18-month delay between seizure and the forfeiture petition filing violated her right to due process. Although the Supreme Court concluded the 18-month delay was a "substantial period of time," it further concluded that under the facts of the case the delay was not unreasonable. In its written opinion, the Supreme Court also made note of the fact that the delay had not prejudiced the claimant's ability to defend against the forfeiture, and the Court repeated its "seminal statement" from *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), that "due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. at 558-570.

Even though the actual holding in *$8,850.00* was adverse to the petitioner's claim of a due process denial, it expressly recognizes the existence of due process rights in the context of a civil forfeiture proceeding. Thus, the answer to the first question is *Yes*. Brown had a liberty or property interest in the seized property that was protected from a mistaken or unjustified deprivation, *See Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.")

Turning to the second question, there is no need to consider the myriad of possible procedural essentials of a meaningful review process, which depend on varying capacities and diverse circumstances. *See e.g., Goldburg v. Kelly*, 397 U.S. 254, 268-269 (1970) ("The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). At its most fundamental level, "[t]he essential requirements of due process" are notice and [t]he opportunity

to present reasons, either in person or in writing, why proposed action should not be taken." *Id.*; *see also Skinner v. Loudoun County Dep't of Mgmt. & Fin. Servs.*, 602 Fed. Appx. 907, *4 (4th Cir.) ("There is no absolute due process right to confront and cross-examine an accuser" in an employment termination case.).

Therefore, the court needs to consider only the minimum procedure directed by the DOJ regulation —namely, that Brown's petition would] be investigated, ruled-on, and he would be provided a reason that was "facially legitimate and bona fide." *Cf. Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972). Facially, none of these procedural safeguards against unfairness was— in the instant case— observed in connection with the original administrative forfeiture declaration, and at least temporarily Brown was not accorded his procedural due process rights. *See Ponte v. Real*, 471 U.S. 491, 512 n.9) ("[T]he essence of procedural due process is … procedures to assure that decisions are fair, rational, and carefully made"); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is freedom from arbitrary governmental action."); *Serio v. Baltimore County*, 115 F. Supp. 2d 509, 516 (DMd. 2000) (Even a "simple non-possessory right – qualifies as a property interest protected by constitutional due process.").

In the context of the case now before the court, the articulated basis for issuance of the August 12, 2014 Declaration of Forfeiture was patently contrary to what the agency told Brown six-days earlier. On its face, it appears to be neither rational nor carefully made, and it did not permit an individual to understand why the government acted as it did. As such it failed to fulfill a fundamental element of due process, and Brown's right to due process was, therefore, violated. *Cf. Bridges v. Wixon*, 326 U.S. 135, 152-153 (1945) (deportation order held invalid on the basis of the agency's failure to comply with its rules designed "to afford [the alien] due process of law" by providing "safeguards against essentially unfair procedures").

10

## IV.    DEFENSE OF NO MANIFEST INJUSTICE

As noted herein above, in a "supplemental declaration" dated July 1, 2015 (dkt. #387), DEA's forfeiture counsel represents that on April 10, 2015 Brown's petition was "denied" on the basis of her office's "review and investigation."  This belated agency action, the government argues, rectified any potential error, resulted in no manifest injustice to Brown, and negated any temporary due process deprivation.  Moreover, it is further argued that the relevant regulations pertaining to consideration of a petition of remission or mitigation are properly post-forfeiture. As support for this contention the government cites the court certain mandatory provisions in 28 C.F.R. §§ 9.5(a)(1) and 9.5(a)(4).  Those two regulatory provisions, the government contends, demonstrate no manifest injustice [4] or even a temporary due process deprivation, because the agency's April 2015 consideration of his petition was based on a regulation that "presume[d]" the validity of forfeiture and permitted the grant of a "remission of [] forfeiture" only after a petitioner has first met the evidentiary burden required under 28 C.F.R. § 9(5)(a)(3).

In the instant case this argument by the government is persuasive.  The initial forfeiture finding, albeit clearly erroneous, did not adversely impact the agency's subsequent investigation, consideration and denial of Brown's petition in April 2015.  Brown has been neither harmed nor subjected to any demonstrable injustice as a result of any agency action, and there has been no error either of law or judgment as a consequence of the agency's investigation and consideration of Brown's petition. *See Hernandez-Avalos v. Lynch*, 784 F. 3d 944, 950-951 (4th Cir. 2015)

---

[4]  *Cf, Brown v. Dur. Mohr*, 2015 U.S. Dist. LEXIS 42018, *4-5  (SDOhio. Mar. 31, 2015) ("'Manifest injustice' has been defined as '[a]n error in the trial court that is direct, obvious, and observable.' *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir.2004) (alteration in original) (quoting *Black's Law Dictionary* 974 (7th ed.1999)).  In other words, 'a showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.' *McDaniel v. Am. Gen. Fin. Servs., Inc.*, No. 04—2667 B, 2007 U.S. Dist. LEXIS 52217, 2007 WL 2084277, at *2 (W.D. Tenn. July 17, 2007) (quoting In re Bunting Bearings Corp., 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004))."

(plaintiff failed to show "any clear error" in the agency findings). In short, there is no demonstration in the record of any "indisputable" injustice or other obvious error indicative of a procedural due process denial. *Cf. Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007) ("Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is 'apparent to the point of being indisputable'" (quoting *Pacific Gas & Electric v. United States*, 74 Fed. Cl. 779, 785 (2006), [and] … "'manifest' [is defined] as 'clearly apparent or obvious'" (citing *Ammex v. United States*, 52 Fed. Cl. 555, 557 (2002)).

## V. DEFENSE OF MOOTNESS

The government's second argument is also persuasive under the facts of this case. The doctrine of mootness [5] derives from the Constitution's Article III requirement that "federal courts may adjudicate only those disputes involving 'a case or controversy.'" *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013). Therefore, plaintiffs in federal lawsuits must have a "continu[ing], … particularized, [and] concrete stake in the outcome of the case through all stages of [the] litigation." *Greenville County Republican Party Exec. Comm. v. Greenville Cnty. Election Comm.*, 604 Fed. Appx. 244, ___, 2015 U.S. App. LEXIS 4210, *19 (4th Cir. Mar. 17, 2015). Accordingly, the court "must dismiss cases and motions as moot, when they do not involve an active "case or controversy" through which the court many assert jurisdiction, *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012); *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002).

In the instant case, the plaintiff received the administrative consideration he requested

---

[5] The Fourth Circuit has recognized that, short of constitutional mootness, a case may become moot under a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration, and in particular, a court should avoid rendering a decision when it lacks the power to provide effective relief. *Cadle Co. II v. Calvert Village Ltd. Pshp.* (In re Cadle, etc.), 2000 U.S. App. LEXIS 1306, *5 (4th Cir. Feb. 2, 2000)

(dkt. #387 at *2-3, 6-8). He was timely notified of the agency conclusion (dkt. #387 at *10). He was apprised of his time-limited right of review (dkt. #387 at * 2, 9), and the record contains no suggestion that such a review was requested within the 10-day appeal time mandated in 28 C.F.R. § 9.3(j).

It is well-settled that absent some reasonably expected recurrence, voluntary action can cause a matter to become moot. *Cf. United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994) (historically the principles implicit in the treatment of moot cases have always been their disposition "in the manner 'most consonant to justice' in view of the nature and character of the conditions which have caused the case to become moot."); *see also Sosna v. Iowa*, 419 U.S. 393, 400 (1975) (because the harm alleged was "capable of repetition" the case could fit into an exception to the mootness doctrine). Given that the current matter is both incident and party specific, recurrence is unlikely. Given the agency's administrative compliance, albeit belated, with its regulatory obligation, standing on the part of the petitioner no longer exists. In short, there no longer exists a cognizable dispute through which the court many assert jurisdiction, and the mootness doctrine is applicable.

## VI.    FINDINGS OF FACT & CONCLUSIONS OF LAW

1. The agency's initial forfeiture finding (dated August 12, 2014) was clearly erroneous; however, it did not adversely impact the agency's subsequent decision (dated April 10, 2015) concerning Brown's petition for remission or mitigation;

2. There was no clear error either of law or judgment in the agency's investigation, consideration and ultimate denial of Brown's petition for remission or mitigation;

3. Brown did not request administrative review following his receipt of the agency's April 10, 2010 letter notifying him of it action on his petition and his opportunity to request reconsideration;

4. Brown's petition was filed pursuant to the Dept. of Justice regulations governing non-judicial civil forfeitures;

5. Brown does not challenge the validity of the vehicle's seizure or make any facial

challenge to the applicable seizure statutes;

6. Brown's procedural due process rights and protections attached to the agency's relevant civil forfeiture actions in this case;

7. Brown suffered no more than an inadvertent and temporary due process deprivation, and there has been no due process violation at least since April 10, 2015;

8. Brown suffered no manifest injustice in connection with the agency's initial forfeiture finding or in connection with its subsequent investigation, consideration and denial of Brown's petition;

9. The agency's processing of Brown's petition pursuant to 28 C.F.R. § 9.5 and its resulting April 10, 2015 denial of his petition resulted in the cessation of any live case or controversy in the instant matter;

10. The court, therefore, lacks the necessary jurisdiction to make any forfeiture-related adjudication;

11. As ultimately conducted, the agency followed the applicable Dept. of Justice regulations for conducting administrative (non-judicial) forfeiture proceedings; and

12. Brown's petition should be denied and dismissed for lack of standing and on the absence of any denial of due process.

## VII. RECOMMENDED DISPOSTION

The government has demonstrated no decisionally significant denial of procedural due process or other injury; Brown has demonstrated no injury caused in fact by the government, and the government has administratively adjudicated Brown's petition in accordance with the applicable DOJ regulation. There no longer exists any live case or controversy, and the court lacks the necessary jurisdiction to make an adjudication. It is, therefore, **RECOMMENDED** that Brown's petition be **DENIED** and **DISMISSED** for lack of standing.

### NOTICE TO PARTIES OF REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the

foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. The presiding district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

3. The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

**DATED**: This 11th day of August 2015.

s/ *James G. Welsh*
United States Magistrate Judge